82 A.3d 426

COMMONWEALTH of Pennsylvania, Appellee

v.

Anthony ROSE, Appellant.

No. 9 MAP 2013.

Supreme Court of Pennsylvania.

Submitted July 30, 2013.

Decided Dec. 17, 2013.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.

## ORDER

PER CURIAM.

AND NOW, this 17th day of December, 2013, as specified herein, the Superior Court's decision, which affirmed the denial of Appellant Anthony Rose's petition filed under the PCRA,[1] is **VACATED** and the case is **REMANDED** to the Court of Common Pleas of Lackawanna County for further proceedings.

The record certified to this Court contains a *pro se* notice of direct appeal from Appellant's judgment of sentence, which the Lackawanna County Court of Common Pleas inexplicably failed to docket, time-stamp, or otherwise certify for review. *See* Pa.R.A.P. 905(a) ("Upon receipt of the notice of appeal the clerk shall immediately stamp it with the date of receipt, and that date shall be shown on the docket."); Pa.R.A.P. 905(b) ("The clerk shall immediately transmit to the prothonotary of the appellate court . . . a copy of the notice of appeal showing the date of receipt[.]"). Pursuant to our general supervisory and administrative authority over all of the lower courts, we direct the Court of Common Pleas to ensure the clerk of court abides by our explicit rules of appellate procedure, as set forth in Pennsylvania Rule of Appellate Procedure 905, *supra,* as it

1. Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541–46.

pertains to Appellant's notice of appeal from his judgment of sentence. *See* Pa. Const. art. V, § 10;[2] *In re Administrative Order No. 1–MD–2003*, 594 Pa. 346, 936 A.2d 1 (2007) (holding clerk of courts, similar to prothonotaries, are clerks of the court of common pleas with no judicial power); *Payne v. Commonwealth Dept. of Corrections*, 582 Pa. 375, 384, 871 A.2d 795, 801 (2005) ("This Court's power to establish rules of procedure for state courts is exclusive.") (citing *Commonwealth v. Morris*, 565 Pa. 1, 771 A.2d 721 (2001)); *Commonwealth v. Morgan*, 469 Pa. 35, 364 A.2d 891, 892 n. 2 (1976) (trial courts have a "responsibility to supervise their personnel and to assure that those persons under their charge responsibly and expeditiously perform their assigned tasks").

Thereafter, a determination of timeliness regarding Appellant's direct appeal from his judgment of sentence, and whether a remand for an evidentiary hearing is warranted with regard thereto, may be made by the courts below. *See Commonwealth v. Jones*, 549 Pa. 58, 700 A.2d 423 (1997) (explaining prisoner mailbox rule and indicating a remand for an evidentiary hearing may be warranted where timeliness is at issue).

Accordingly, it is hereby **ORDERED** that the Superior Court's decision which is before us for review is hereby **VACATED** and the case is **REMANDED** to the Lackawanna County Court of Common Pleas for further proceedings. Jurisdiction is relinquished.

Justice SAYLOR files a dissenting statement in which Chief Justice CASTILLE and Justice TODD join.

Justice SAYLOR, dissenting.

I respectfully differ with the majority's *per curiam* decision to vacate the Superior Court's order and remand for further

---

2. **Article V, Section 10–Judicial Administration.**

(a) The Supreme Court shall exercise general supervisory and administrative authority over all the courts [ . . . ].

(c) The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts . . . and supervision of all officers of the Judicial Branch [ . . . ].

proceedings based on the suspicion that, three years ago, there might have been a timely-filed direct appeal which was overlooked by the local filing office. Since there is no notice of appeal bearing a timely date stamp, the remand directed by the majority appears to be based on the prisoner mailbox rule and a factual premise that a document captioned "Appeal of Sentence" found in the original record may have been tendered to prison authorities on a date typewritten on the document itself (presumably by the prisoner, *i.e.*, Appellant).

Initially, upon a review of the original record, it is noteworthy that the "Appeal of Sentence" document is stapled to, and creased with, another document entitled "Agreement for Dismissal of Charges" (although there was no such agreement at least involving the Commonwealth). The front cover page is also dated December 8 in typeface, but it bears the filing office's time-stamp of December 15, 2010. Further, Appellant filed an undated *pro se* petition for post-conviction relief, bearing a time stamp of December 9, 2010, which expressly affirms that he *did not file* a direct appeal. The upshot is that Appellant apparently filed a confusing array of *pro se* documents, two of which seem to have been presented to the filing office as a package.

I know of no authority requiring filing offices to sort through litigants' filings to determine whether they may have inappropriately combined several different documents. Accordingly, to the extent the majority's directive to the common pleas courts to supervise filing offices implies a criticism of the particular office's conduct in the present circumstances, I do not support such criticism.

Moreover, to the degree there is a suggestion in the record that Appellant may have wished at one time to pursue a direct appeal, I would emphasize that there is no evidence that he ever filed a timely one. In this regard, under our decisional law, to support application of the mailbox rule, a prisoner bears the burden of proving delivery of the notice to prison authorities within the prescribed time period for its filing. *See Commonwealth v. Jones*, 549 Pa. 58, 64, 700 A.2d 423, 426 (1997). It is therefore significant, in the first instance, that

Appellant has advanced no argument whatsoever that he tendered a timely appeal to the appropriate authorities; nor has he furnished any proof regarding this essential action.[1] Rather, Appellant appears to be intent on pursuing his post-conviction-review efforts, per which this Court allowed his present appeal.

Certainly, there are ambiguities concerning the "Appeal of Sentence," with which the majority concerns itself here. Nevertheless, I question whether this Court should now act *sua sponte*—approximately three years into Appellant's maximum-four-year-sentence—to thwart Appellant's directed effort to secure full and fair post-conviction review. I am particularly circumspect, given the length of time it has taken for Appellant's challenge to percolate through each level of the judicial system to finally reach our court of last resort. My reluctance is also in light of this Court's restructuring of the direct-appeal landscape to defer ineffectiveness claims to PCRA review, *see Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002), which is precisely the forum in which Appellant seems to wish to litigate his ineffectiveness assertions.

Finally, I note that the majority's decision to vacate the order of the Superior Court may cause further delay and unnecessary complications in bringing this protracted litigation to a final resolution. For example, should the PCRA court confirm that Appellant did not lodge a timely direct appeal, or if Appellant expresses a desire to waive any remaining direct-appeal rights, the status quo is that the PCRA court's order denying post-conviction relief remains in full force and effect, while there is no extant decision from the intermediate appellate court. In such circumstances, it is unclear what mechanism Appellant should employ to attempt

---

1. I recognize that, in light of constraints inherent in the institutional environment, this Court has indicated that any "reasonably verifiable evidence" of the date on which a prisoner deposits the appeal with the prison authorities may be credited. *Id.* Along these lines, we have specified that cash slips, affidavits, or evidence of operating procedures may suffice. *See id.* I do not believe, however, that we have ever before suggested that prisoners' potentially self-serving inscriptions on appeal documents are, in and of themselves, sufficient. Indeed, to do so, obviously, would invite abuse.

to reinstate an order of the Superior Court which was unfavorable to him and regain the discretionary review of this Court denied to him with the present relinquishment of jurisdiction.

Chief Justice CASTILLE and Justice TODD join this dissenting statement.