J-S63013-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MARCUS LEE GRAHAM, | |
| Appellant | No. 619 MDA 2014 |

Appeal from the PCRA Order March 12, 2014
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0003377-2005

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MARCUS LEE GRAHAM, | |
| Appellant | No. 620 MDA 2014 |

Appeal from the Order March 12, 2014
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0003378-2005

BEFORE: BOWES, PANELLA, and PLATT,[*] JJ.

MEMORANDUM BY BOWES, J.:                    **FILED OCTOBER 31, 2014**

Marcus Lee Graham appeals from the March 12, 2014 orders denying

PCRA relief in two related actions. We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

Appellant pled guilty to first-degree murder, robbery, conspiracy to commit robbery, and related charges of kidnapping and burglary stemming from an incident that occurred over a two-day period commencing March 3, 2005. He and his co-defendants, Luis Fargas and Michael Hall, abducted Jonathan Yocum and stripped, bound, and threatened him until he provided the PIN number to his ATM card. Appellant continued to hold Mr. Yocum prisoner while Fargas and Hall took the victim's Jeep and withdrew $500 from the victim's account at a convenience store ATM. The next day, the three men held Mr. Yocum at gunpoint as they entered his home and stole his checkbook, a PlayStation, and several large jugs of change. They forced Mr. Yocum to fill out a withdrawal slip for $2,000, drove him to the bank where he secured the cash, and then took the money from the victim. The three co-conspirators continued to hold Mr. Yocum while they had breakfast and shopped, and later, forced him to make another withdrawal from a bank drive-through using a personal check.

Appellant decided that Mr. Yocum had to be killed. He and his co-conspirators purchased plastic wrap and duct tape. Appellant dropped off Fargas near his home after paying him $200 for a gun and warning him not to tell anyone about the events. Appellant and Hall wrapped Mr. Yocum's head in multiple layers of plastic wrap and his body in layers of duct tape. Then, Appellant fatally shot Mr. Yocum in the head, wrapped his body in a green blanket, and left it in the back seat of his vehicle.

Appellant's co-conspirator Hall was sentenced to life in prison; Fargas was sentenced to twelve to twenty years imprisonment. Appellant was charged with first-degree murder and the Commonwealth notified him that it intended to seek the death penalty. Appellant pled guilty to all charges and received an aggregate sentence of life imprisonment plus forty to eighty years incarceration.

Appellant filed a post-sentence motion challenging his sentence as excessive, and subsequently sought to withdraw his guilty plea alleging that his counsel coerced it. Trial counsel, John Elder and Michael Dautrich, were permitted to withdraw and new counsel was appointed. After a hearing on Appellant's petitions, the trial court denied relief. Appellant timely appealed asserting the same issues. Appellate counsel Jill Scheidt filed an **Anders** brief and sought leave to withdraw. This Court affirmed judgment of sentence on December 2, 2009, and granted counsel's motion to withdraw. **Commonwealth v. Graham**, 990 A.2d 44 (Pa.Super. 2009). Appellant's petition seeking an extension of time to file a petition for *allocatur* was denied on January 27, 2010.

Appellant filed the instant *pro se* PCRA petition on November 1, 2010, and the trial court appointed counsel. Counsel filed a no-merit letter pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988) and **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1988) (*en banc*), and requested leave to withdraw as counsel. Appellant filed a response. A

hearing was held and Appellant retained new counsel, who filed an amended PCRA petition with the court's permission. Following an evidentiary hearing on October 23, 2013, the PCRA court denied relief. This appeal followed.

Appellant presents five issues for our review:

1. Did the P.C.R.A. Court violate Appellant's rights under the Sixth and Fourteenth Amendments by finding that plea counsel was not ineffective for advising Appellant to plead guilty when counsel had failed to investigate and interview potential alibi witnesses and/or timely notice Appellant's alibi defense?

2. Did the P.C.R.A. Court violate Appellant's rights under the Sixth and Fourteenth Amendments by finding that plea counsel was not ineffective for misadvising Appellant as to the Commonwealth's expert opinion and failing to move to suppress an alleged incriminating letter, which Appellant averred had been tampered with and/or forged by co-defendant, Luis Fargas?

3. Did the P.C.R.A. Court violate Appellant's rights under the Sixth and Fourteenth Amendments by finding that plea counsel was not ineffective for failing to explain or require the Court to explain the elements of each offense so that Appellant could make a knowing and intelligent decision whether to plead guilty?

4. Did the P.C.R.A. Court violate his rights under the Sixth and Fourteenth Amendments by finding that plea counsel was not ineffective for failing to 'federalize' Appellant's claims on direct appeal?

5. Did the P.C.R.A. Court violate Appellant's rights under the Sixth, Eighth and Fourteenth Amendments by finding that Appellant was not entitled to relief pursuant to *Miller v. Alabama*, the Eighth and the Fourteenth Amendments to the U.S. Constitution?

Appellant's brief at 4.

In reviewing the grant or denial of PCRA relief, "[a]n appellate court reviews the PCRA court's findings of fact to determine whether they are free from legal error." **Commonwealth v. Spotz**, 84 A.3d 294, 311 (Pa. 2014). We evaluate the record "in the light most favorable to the prevailing party at the PCRA level." **Commonwealth v. Henkel**, 90 A.3d 16, 20 (Pa.Super. 2014) (*en banc*). In our review of the record, we "afford great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record." **Commonwealth v. Pander**, 2014 PA Super 201, *3 (*en banc*). Where the issue involves a question of law, "our standard of review is *de novo* and our scope of review is plenary." **Henkel**, **supra** at 20.

Appellant presents claims of plea counsel ineffectiveness. We review such claims under the following principles:

> Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him. In Pennsylvania, . . . to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. If a petitioner fails to prove any of these prongs, his claim fails. Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. . . . To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.

***Spotz***, ***supra*** at 311-12 (citations and quotation marks omitted).

Appellant's first contention is that plea counsel was "constitutionally ineffective" for advising him to plead guilty prior to interviewing potential alibi witnesses, weighing their testimony, and evaluating the viability of an alibi defense. Appellant contends that a package containing affidavits from multiple witnesses who allegedly would have established an alibi for Appellant was delivered to defense counsel's office. The package also contained evidence that a necklace which, according to a co-defendant, was taken from the victim by Appellant, had been purchased prior to the crime and presented to Appellant as a gift. Finally, Appellant avers that counsel was advised that cellular phone records existed that would corroborate his alibi, but counsel did not obtain them.

At the PCRA evidentiary hearing, it was established that the crime spree began at approximately 7:00 p.m. on March 3, 2005, and continued through the morning of March 4, 2005. The testimony of Appellant's father shed no light on the whereabouts of Appellant during the time the crimes were committed, and thus, the PCRA court held that the absence of his testimony was not prejudicial. The trial court found not credible the testimony of Appellant's mother, Geneva DeBooth, in light of her prior conviction for retail theft, her obvious bias, and inconsistencies between her testimony and that of her daughter Shaneva. Trial Court Opinion, 3/11/14, at 7-8. The court also discredited Shaneva's affidavit and testimony as it

contradicted her prior sworn statement in which she told police that Appellant admitted to her that he killed Mr. Yocum.

Felicia Ortiz testified that she collected the affidavits, a receipt for a silver necklace purchased by Sarita Brown for Appellant, and a videotape depicting Appellant wearing the necklace prior to March 3, 2005, and delivered them to Attorney Elder's office. The witness had no personal knowledge of the content of the affidavits or the purchase of the necklace. The PCRA court found, and the record supports, that her testimony shed no light on the whereabouts of Appellant during the relevant time.

Attorney Michael Dautrich testified that he was aware of the affidavits of the two women and the potential for an alibi defense, but that he believed their testimony to be false since Appellant had confessed to counsel his involvement in the crime. Furthermore, Mr. Dautrich maintained that he could not ethically present knowingly false testimony at trial. Moreover, Appellant had instructed counsel in writing to "throw away" his mother and sister's statements, which he construed as a direction to abandon any alibi defense.

The PCRA court credited the testimony of Attorney Dautrich. Furthermore, it concluded that trial counsel had a reasonable strategy for not interviewing Felicia Ortiz regarding the receipt for a silver necklace and the videotape depicting Appellant wearing that necklace in October 2004. Since Ms. Ortiz had no knowledge of Appellant's whereabouts during the

relevant time, her testimony had no probative value to Appellant's potential alibi defense. Furthermore, we find little relevance in evidence that Appellant owned a silver necklace prior to the events involving Mr. Yocum. That fact alone does not discredit Luis Fargas' preliminary hearing testimony that Appellant ripped a silver chain from the neck of the victim.

After a thorough review of the record, we find ample support for the PCRA court's factual and credibility determinations. Additionally, in light of the statements provided to police by witnesses detailing Appellant's admitted participation in the murder, as well as video surveillance that depicted co-defendant Fargas and two other males in the victim's car at the bank, we find counsel had a reasonable strategy for not pursuing the alibi defense and that Appellant failed to establish prejudice.

Second, Appellant alleges that trial counsel was ineffective in failing to seek suppression of two letters he sent to Luis Fargas while the two men were in prison. He maintains that the letters were tampered with to render them incriminating in nature. At a minimum, Appellant contends, counsel's failure to consult with a handwriting expert to prove that the letters were altered was "patently unreasonable." Appellant's brief at 28. He avers that counsel should have asked the court to compel the Commonwealth to turn over a copy of its handwriting expert's report and sought a continuance in order to consult his own expert.

The PCRA court concluded that the letters were not determined to be incriminating until the day of Appellant's plea, and that a motion to suppress at that time may have prompted the Commonwealth to withdraw its plea offer. Moreover, the court found that Attorney Dautrich had discussed with Appellant the weight and sufficiency of the evidence against him, the pros and cons of the plea, and informed Appellant of the contents of the report authored by the Commonwealth's handwriting expert. Nonetheless, Appellant opted for the plea.

We find that Appellant has failed to proffer any basis for suppression of the letters. He avers that the writings were altered and contends that counsel should have consulted a handwriting expert, the inference being that an expert could have confirmed the tampering. However, it is Appellant's burden to demonstrate prejudice, *i.e.*, that but for counsel's errors and omissions, the result would have been different. Appellant did not offer any evidence substantiating his claim that a handwriting expert could or would have discredited the letters, and thus, failed to demonstrate prejudice at the evidentiary hearing.[1]

Next, Appellant alleges that Attorneys Elder and Dautrich were ineffective because they failed to explain the elements of each offense with

---

[1] Appellant's brief contains a side-by-side comparison of the text of the letter Appellant contends he sent to Luis Fargas and the alleged altered letter. This is not record evidence and has been disregarded by this Court in evaluating Appellant's claim.

which he was charged, resulting in an unknowing and unintelligent plea. Attorney Dautrich testified to the contrary that he and Attorney Elder provided that information to Appellant, and there was "no question" in his mind that Appellant understood the nature of the offenses. N.T., 11/23/13, at 39, 42. Furthermore, Appellant answered affirmatively when the trial court asked him whether he understood the nature of the charges to which he was pleading guilty and signed and initialed the written guilty plea colloquies. *See* Commonwealth Exhibits 4 and 5.

This Court held in ***Commonwealth v. Hickman***, 799 A.2d 136, 141 (Pa.Super. 2002), that in order to demonstrate prejudice due to counsel's inadequate advice, "the defendant must show that it is reasonably probable that, but for counsel's errors, he would not have pleaded guilty and would have gone to trial." Although Appellant testified at the evidentiary hearing, he did not represent that he would have proceeded to trial had he been properly informed. Furthermore, Mr. Dautrich testified that he and Mr. Elder ensured that Appellant knew the elements of the offenses charged, the Commonwealth's evidence supporting those charges, and the consequences if he was found guilty. The PCRA court expressly credited Attorney Dautrich's testimony, and we have no basis to disturb that credibility determination. Appellant's claim fails.

Appellant contends that appellate counsel, Ms. Jill Scheidt, was ineffective for failing to "federalize" his claims on direct appeal. In essence,

he claims that counsel should have alleged that his excessive sentence constituted cruel and unusual punishment in violation of the Eighth amendment of the United States Constitution. Moreover, counsel should have argued that his plea was unknowing, unintelligent, and involuntary, and contrary to protections afforded by the Fifth, Sixth, and Fourteenth Amendments. According to Appellant, "[a]ny reasonably competent attorney" would have cited to federal law to ensure that these claims would be deemed fairly presented in state court to permit federal *habeas* review. Appellant's brief at 34.

The Commonwealth relies upon *Halloran v. Ryan*, 835 F.2d 506 (3rd Cir. 1987), for the proposition that it is sufficient for purposes of *habeas corpus* review if the legal theory and the facts supporting that theory were presented to the state courts, and that no specific reference to federal law is required. *See McCandless v. Vaughn*, 172 F.3d 255 (3rd Cir. 1999). Thus, any failure on the part of appellate counsel to cite federal law in support of Appellant's claims on direct appeal is not fatal to a future federal *habeas* proceeding.

We find, contrary to Appellant's representation, that appellate counsel did argue that Appellant's sentence constituted "cruel and unusual punishment" in violation of the Eighth Amendment of the United States Constitution. *See Graham*, *supra* (unpublished memorandum at 7). In addressing that argument, this Court relied upon *Lockyer v. Andrade*, 538

U.S. 63, 72 (2003), for the proposition that sentences for terms of years violate the Eighth Amendment when they are grossly disproportionate to the crimes for which they are imposed. We rejected Appellant's claim that his sentence met that criteria, given "the particular brutality and severity" of Appellant's conduct. *Id*. Thus, the facts do not support Appellant's contention that appellate counsel failed to federalize his Eighth Amendment claim.

Furthermore, Appellant's claim on appeal that his guilty plea was not knowing, intelligent, and voluntary due to trial counsel's coercion is, in reality, an ineffectiveness claim under the Sixth Amendment's right to counsel. Thus, the claim by definition is "federalized." On direct appeal, this Court found no indication that Appellant's plea had been coerced by counsel given his denial during the guilty plea colloquy that any threat or promise had been made to him. *Id*. at 10, citing *Commonwealth v. Stork*, 737 A.2d 789 (Pa.Super. 1999).[2] Thus, this challenge to the effectiveness of appellate counsel's representation is unavailing.

_____

[2]   Generally, such claims are deferred for collateral review pursuant to *Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002). Since the trial court held an evidentiary hearing on the post-sentence motion alleging that counsel coerced the plea, which is an ineffectiveness claim at its core, we surmise that the claim was reviewed on direct appeal pursuant to the exception delineated in *Commonwealth v. Bomar*, 826 A.2d 831 (Pa. 2003) (limited in *Commonwealth v. Holmes*, 79 A.3d 562 (Pa. 2013)) (permitting consideration of such claims on direct appeal where the record was fully developed at a hearing in the trial court).

Finally, Appellant alleges that his life sentence is illegal under the United States Supreme Court's decision in **Miller v. Alabama**, __U.S.__, 132 S.Ct. 2455 (2012), which held unconstitutional mandatory life sentences without the possibility of parole for juveniles. The PCRA court dismissed this claim based on the fact that Appellant was eighteen years and five months old when he murdered Mr. Yocum, and hence, not a juvenile. **See Commonwealth v. Cintora**, 69 A.3d 759, 764 (Pa.Super. 2013) (holding that **Miller** did not create a newly-recognized constitutional right for the nineteen and twenty-one-year-old petitioners for purposes of the exception to the PCRA time-bar). **Cintora** is controlling herein and precludes relief.[3] Furthermore, since our Supreme Court held in **Commonwealth v. Cunningham**, 81 A.3d 1 (Pa. 2013), that **Miller**'s prohibition does not apply retroactively, and Appellant's judgment of sentence became final prior to the decision in **Miller**, no relief is due on that basis as well.

Orders affirmed.

---

[3] Appellant cites and attempts to distinguish our unpublished memorandum in **Commonwealth v. Graves**, 83 A.3d 1073 (Pa.Super. 2013), where we denied relief to a twenty-one-year-old under **Miller**. Unpublished memoranda of this Court have no precedential value. **See** I.O.P. Rule 65.37(A) of the Superior Court of Pennsylvania ("An unpublished memorandum decision shall not be relied upon or cited by a Court or a party in any other action or proceeding, except that such a memorandum decision may be relied upon or cited (1) when it is relevant under the doctrine of law of the case, res judicata, or collateral estoppel, and (2) when the memorandum is relevant to a criminal action or proceeding because it recites issues raised and reasons for a decision affecting the same defendant in a prior action or proceeding.").

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/31/2014