J-S65020-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RAYON DAMION SCARLETT | |
| Appellant | No. 3556 EDA 2013 |

Appeal from the Judgment of Sentence June 25, 2013
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0000339-2012

BEFORE: PANELLA, OLSON and PLATT,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED NOVEMBER 25, 2014**

Appellant, Rayon Damion Scarlett, appeals from the judgment of sentence entered on June 25, 2013, as made final by the denial of Appellant's post-sentence motion on November 19, 2013. On this direct appeal, Appellant's court-appointed counsel has filed both a petition to withdraw as counsel and an accompanying brief pursuant to **Anders v. California**, 386 U.S. 738 (1967) and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).[1] We conclude that Appellant's counsel has complied with the procedural requirements necessary to affect withdrawal. Moreover, after independently reviewing the record, we conclude that the instant

---

[1] **See also Commonwealth v. McClendon**, 434 A.2d 1185 (Pa. 1981).

*Retired Senior Judge assigned to the Superior Court.

appeal is wholly frivolous. We, therefore, grant counsel's petition to withdraw and affirm Appellant's judgment of sentence.

The trial court ably summarized the facts underlying Appellant's convictions for kidnapping and related offenses. As the trial court explained:

> In October 2007, the Montgomery County Detectives Narcotics Enforcement Team conducted a search of 806 Smith Street in Norristown, Montgomery County, Pennsylvania. This search resulted in the seizure of approximately [15] pounds of marijuana, firearms, ammunition, and drug packaging material. [Appellant] and his friends[,] Ronald Wilson and Khanniel Headley[ (hereinafter "Wilson" and "Headley"),] were arrested and charged with possession with intent to deliver and related offenses.
>
> On October 30, 2007, following his arrest, [] Headley gave a statement to Detective Michael Fedak. In this statement, Headley told [Detective Fedak] . . . that he was not a resident of 806 Smith Street. Headley further told the detective that, although the marijuana seized was not his, he knew there was "about a pound of marijuana" there and that he went to the house "[b]ecause I get marijuana there to smoke." Although Headley declined to tell Detective [Fedak] specifically who had provided him with marijuana at the residence, Headley did tell the detective that [Appellant] – a resident of 806 Smith Street – was the only person upstairs at the home when an individual named "Tune" came to the home and went upstairs for marijuana.
>
> At [Appellant's] trial, Headley testified that, in March 2008, he was living in a third floor bedroom in a house owned by [Appellant's own] grandmother at 400 East Marshall Street in Norristown. At approximately midnight on March 28, 2008, Headley was alone in his bedroom getting ready for bed. Headley had taken off his clothes and shoes and was wearing only a tee shirt and boxer shorts when there was a knock at his bedroom door. Headley opened the door and saw [Appellant's] brothers[,] Ricardo "Ricky" Scarlett and [A.S. (hereinafter "Ricardo" and "A.S."),] standing in the

- 2 -

hallway. Ricardo was pointing an SKS-type assault rifle at Headley. [A.S.] – who was approximately [12] years old at the time – was carrying a knife.

Ricardo and [A.S.] came into the bedroom and Ricardo ordered Headley to sit down on the floor, telling him that "The Boss want [sic] to talk to you." Headley testified that he knew Ricardo meant that [Appellant] wanted to talk to him, since [Appellant] was referred to as "The Boss."

With Headley sitting on the floor, Ricardo took out his cell phone and – continuing to point the gun at Headley – made a call during which he said: "The fish is ready" or "The fish is fried." Headley testified that he and the Scarlett brothers are from Jamaica and that, in Jamaican slang, "fish" is a slang term for a snitch or [an] informant.

[Appellant] and [] Wilson . . . then arrived at Headley's bedroom. Headley testified that [Appellant] ordered Wilson to tie [Headley] up, and that Wilson did so, binding Headley's arms behind his back with an electrical extension cord.

Headley testified that [Appellant], Wilson, and Ricardo [] then began rummaging through his belongings. Headley testified that he did not see [Appellant] actually steal anything, but someone – he thought Ricardo – took his earring out of his ear, and that his watch, his chain, and [the] money from his wallet were stolen.

Headley testified that [Appellant] then sat beside him on the floor with a Bible and "started talking to me about betrayal and stuff like that," accusing Headley of being a snitch and of telling the police that [Appellant] was "selling marijuana out of Smith Street." Headley testified that [Appellant] was "flashing around" what [Appellant] said was a copy of the statement Headley had given to Detective Fedak and that [Appellant] said he had obtained the statement from his lawyer.

Headley testified that [Appellant, Wilson, and Ricardo] spent the remainder of the night threatening [Headley] and discussing what they should do with him. Headley testified that they discussed shooting him, putting a pillow over his

head so no one would hear the shot. Headley told [Appellant] that his grandmother was on the floor below and that she would hear what was happening and call the police. Headley testified that [Appellant] then suggested they take [Headley] to New York "and get rid of [Headley] somewhere," and Ricardo said that they should go to Home Depot to "get some stuff and cut him up."

Headley testified that, during his ordeal: [Appellant] "told his brother to pee on [Headley]"; that the men stepped on him; and that Ricardo put the barrel of the SKS in [Headley's] mouth and told him to suck on it. Headley testified that [Appellant] ordered him to drink liquid from a Gatorade bottle. When Headley refused, Ricardo put the barrel of the SKS to his head and ordered him to drink. Headley complied and soon was "throwing up all over" himself.

Headley testified that [Appellant] ultimately left at approximately [4:00] a.m., saying he wanted to get some sleep and telling the others that he would call them to "tell them what to do with [Headley]." After [Appellant] left, Ricardo said to Headley: "You're a good guy, but [Appellant] is my brother so we got to do what he said."

[Wilson and A.S.] eventually left to go to a store for cigarettes, taking Headley's car keys with them. Ricardo remained sitting on the bed with the SKS pointed at Headley. Ricardo eventually fell asleep and Headley used the opportunity to escape[; Headley then ran] two blocks to the nearest police station.

Headley arrived at the Norristown Police Department at approximately 5:30 a.m. Corporal David Brook testified that, when he arrived, Headley was barefoot and dressed only in this underwear, with his hands still bound behind his back with electrical cord. After listening to Headley's account of what happened, all available police units proceeded to 400 East Marshall Street, where they encountered Ricardo and [A.S.; the police were able to take] . . . Ricardo into custody [that night]. In the backyard of the residence, the police discovered an SKS assault rifle partly hidden under a doormat. The weapon was clean and dry, despite it having rained earlier that evening, and [the

weapon] contained ten live rounds of ammunition in its magazine. The SKS was entered into evidence without defense objection as Commonwealth Exhibit 2. At [Appellant's] trial, Headley identified the SKS as the weapon that was employed by Ricardo [] during his ordeal.

During a search of the interior of 400 East Marshall Street, the police discovered that Headley's bedroom was in disarray, and that there was a Gatorade bottle and what appeared to be vomit on the floor. During a subsequent search of 806 Smith Street, the police discovered a copy of Headley's October 2007 statement to Detective Fedak. The statement was found in a bedroom where the police also discovered items indicating that the bedroom was occupied by [Appellant].

An arrest warrant was issued for [Appellant], but he was nowhere to be found. Ultimately, [Appellant] was arrested in Florida in December 2011, following a routine traffic stop, and was returned to Montgomery County[, Pennsylvania] for trial on charges of kidnapping and related offenses.

On January 14, 2013, the jury returned its verdict, finding [Appellant guilty of]: [] kidnapping [Headley] with the intent to facilitate the commission of robbery (Count I); [] kidnapping [Headley] with the intent to terrorize (Count II); [] conspiracy to commit robbery with the intent to terrorize (Count III); and [] terroristic threats (Count IX).[2] [Appellant] was found not guilty of robbing [Headley] (Count V).

[Appellant] appeared for sentencing on June 25, 2013. Following [the] hearing, the [trial] court sentenced [Appellant] on Count I (kidnapping with intent to facilitate the commission of robbery), to not less than four [] nor more than eight [] years [in prison]. On Count II (kidnapping with intent to terrorize), [the trial court] imposed no further penalty beyond entry of the verdict of

_____

[2] 18 Pa.C.S.A. §§ 2901(a)(2), 2901(a)(3), 903(a)(1), 2706, and 3701(a)(1)(i), respectively.

guilty, given [the trial court's determination] that the two kidnapping offenses merged for sentencing purposes. On Count III (conspiracy to commit the crime of kidnapping with intent to terrorize), [Appellant] was sentenced to not less than two [] nor more than four [] years [in prison], to be served consecutively to the sentence imposed on Count I. On Count XI (terroristic threats), [Appellant] received a sentence of three [] years [of] probation to be served consecutively to [Count III].

The [trial] court thus imposed an aggregate sentence of not less than six [] nor more than [12 years'] imprisonment, followed by [three years'] probation.

On July 5, 2013, [Appellant] filed, *pro se*, a timely post-sentence motion. On July 24, 2013, Assistant Public Defender Timothy Peter Wile, Esquire, filed on [Appellant's] behalf – with leave of court – an amended post-sentence motion. [The trial court] denied [Appellant's] post-sentence motion and amended post-sentence motion by order [entered] November [19], 2013.

Trial Court Opinion, 5/27/14, at 1-6 (internal citations, footnotes, and emphasis omitted).

Appellant filed a timely notice of appeal. On appeal, Appellant's court-appointed counsel filed a petition for leave to withdraw and accompanied this petition with an ***Anders*** brief. Within the ***Anders*** brief, Appellant raises the following claims:[3]

[1.] [The trial court] abused [its] discretion when [it] admitted into evidence an SKS carbine [rifle], Headley's

---

[3] The trial court ordered Appellant to file and serve a concise statement of errors complained of on appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). Appellant complied with the order and, within Appellant's Rule 1925(b) statement, Appellant listed all of the claims that he raises on appeal.

statement, a computer printout from an internet search engine, [] evidence of [Appellant's] alleged prior bad acts[, and the] . . . *habeas corpus* testimony of Detective [Michael] Crescitelli.

[2.] [The trial court] committed reversible error when [it] denied [Appellant's] motion for judgment of acquittal on the robbery and kidnapping counts at the close of the Commonwealth's evidence.

[3.] [The trial court] abused [its] discretion when [it] denied [Appellant's] motion for a new trial on the basis that the guilty verdicts were against the weight of the evidence.

[4.] [The trial court] abused [its] discretion by sentencing [Appellant] to an aggregate term of six [] to [12] years of total confinement to be followed by three [] years of special probation.

Appellant's Brief at i-ii (internal capitalization and bolding omitted).

Before reviewing the merits of this appeal, this Court must first determine whether counsel has fulfilled the necessary procedural requirements for withdrawing as counsel. *Commonwealth v. Miller*, 715 A.2d 1203, 1207 (Pa. Super. 1998).

To withdraw under *Anders*, court-appointed counsel must satisfy certain technical requirements. First, counsel must "petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous." *Miller*, 715 A.2d at 1207. Second, counsel must file an *Anders* brief, in which counsel:

(1) provide[s] a summary of the procedural history and facts, with citations to the record; (2) refer[s] to anything in the record that counsel believes arguably supports the

appeal; (3) set[s] forth counsel's conclusion that the appeal is frivolous; and (4) state[s] counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

Finally, counsel must furnish a copy of the *Anders* brief to his client and advise the client "of [the client's] right to retain new counsel, proceed *pro se* or raise any additional points worthy of this Court's attention." *Commonwealth v. Woods*, 939 A.2d 896, 898 (Pa. Super. 2007).

If counsel meets all of the above obligations, "it then becomes the responsibility of the reviewing court to make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." *Santiago*, 978 A.2d at 355 n.5, *quoting* *McClendon*, 434 A.2d at 1187. It is only when both the procedural and substantive requirements are satisfied that counsel will be permitted to withdraw.

In the case at bar, counsel has met all of the above procedural obligations. We must, therefore, review the entire record and analyze whether this appeal is, in fact, wholly frivolous.

We have reviewed Appellant's brief, the relevant law, the certified record, and the well-written opinion of the able trial judge, the Honorable William J. Furber, Jr., President Judge. We conclude that the claims raised in Appellant's *Anders* brief are either waived or frivolous and that the trial

- 8 -

court's opinion, filed on May 27, 2014, meticulously and accurately explains why Appellant's claims on appeal are either waived or frivolous. Therefore, we adopt the trial court's opinion as our own. In any future filings with this or any other court addressing this ruling, the filing party shall attach a copy of the trial court's opinion with the name of A.S. redacted and replaced with initials so as to protect the juvenile's identity.

Further, after an independent review of the entire record, we see nothing that might arguably support this appeal. The appeal is therefore wholly frivolous. Accordingly, we affirm Appellant's judgment of sentence and grant counsel's petition to withdraw appearance.[4]

Petition to withdraw appearance granted. Judgment of sentence affirmed. Jurisdiction relinquished.

---

[4] We note that Appellant responded to counsel's petition to withdraw and raised a number of additional claims on appeal. However, the additional claims Appellant seeks to raise are ineffective assistance of counsel claims, which are not reviewable on direct appeal. *Commonwealth v. Grant*, 813 A.2d 726, 738 (Pa. 2002) ("as a general rule, a [defendant] should wait to raise claims of ineffective assistance of trial counsel until collateral review"); *Commonwealth v. Holmes*, 79 A.3d 562, 620 (Pa. 2013) ("absent [certain, specified] circumstances [(that are inapplicable to the case at bar)] claims of ineffective assistance of counsel are to be deferred to PCRA review; trial courts should not entertain claims of ineffectiveness upon post-verdict motions; and such claims should not be reviewed upon direct appeal"). We further note that, within Appellant's response, Appellant has also restated all of the claims that counsel raised in the *Anders* brief and that the trial court analyzed in its Rule 1925(a) opinion. *See* Appellant's Response, 9/5/14, at 6-12.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/25/2014