J-S21041-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| AISHA PERRY, | |
| Appellant | No. 2469 EDA 2014 |

Appeal from the Judgment of Sentence June 12, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0005147-2013

BEFORE:  BENDER, P.J.E., LAZARUS, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:                 **FILED FEBRUARY 12, 2016**

Appellant Aisha Perry appeals the judgment of sentence entered on June 12, 2014, in the Court of Common Pleas of Philadelphia County.  We affirm.

Appellant, a former Lieutenant in the Philadelphia Police Department, was charged with multiple counts of risking catastrophe, theft of services and conspiracy to commit those crimes.[1]  Her convictions arose after a Philadelphia Gas Works (PGW) Employee discovered an illegal bypass mechanism had been installed where the gas meter would normally be located at a residence at 561 Devereaux Street when responding to a complaint of a gas leak in the area of Devereaux and Bingham Streets in Philadelphia.  The home belonged to an elderly couple later identified as the

---

[1] 18 Pa.C.S. §§ 3302(b), 3926(a)(1), 903(c), respectively.

*Former Justice specially assigned to the Superior Court.

parents of co-defendant George Suarez, a patrol officer with the Philadelphia Police Department and Appellant's business partner, who had been paying their bills.

Upon examining the records of the previous four years of service at the location, Carlos Figueroa, a PGW manager of the Revenue Protection Unit, discovered three properties were related to 561 Devereaux, all of which had sporadic gas usage histories. Appellant jointly owned one of those properties located at 1912 West Girard Avenue and operating as a residential treatment center for alcoholism with Mr. Suarez. Another property, 2833 Winchester Avenue, was owned by Appellant as her personal residence.

Mr. Figueroa and two PGW crewmembers went to 1912 West Girard Avenue on April 8, 2011, to further investigate and encountered Appellant who identified herself as the office manager and granted the crew access to the facility. When Mr. Figueroa indicated he needed access to the utility hookups located in the basement, Appellant stated the basement door was locked and suggested they return later. Instead, Mr. Figueroa called 911 and requested police assistance. Upon hearing this, Appellant allowed a crew member and him to enter the basement. There, they discovered an illegal bypass, which they promptly disconnected, and an electric meter, which appeared to have been manipulated.

Upon learning that Appellant was a Philadelphia Police Officer, Mr. Figueroa contacted a PGW employee to inspect the property at 2833

Winchester Avenue immediately. Upon arriving, the PGW employee heard noises from inside and saw Mr. Suarez come out of the home perspiring and visibly shaken. Mr. Suarez refused to allow the PGW safety check until he was informed the police and a locksmith would be called. After making a phone call, Mr. Suarez permitted the PGW crew to enter, at which time a strong odor of gas was detected. A crewmember took a reading of the atmosphere and discovered a near-explosive level of gas in the home.

On the evening of April 9, 2011, and into the next morning, officers executed four search warrants, one of which was at 1912 West Girard Avenue and another at Appellant's home at 2833 Winchester Avenue. At the latter, it was discovered that the water meter had been manipulated, and a later examination of billing records indicated the water service had been stolen. The same was discerned with regard to the electric meter. On September 1, 2012, a warrant was issued for the arrest of Appellant and Mr. Suarez.

A jury trial commenced on April 23, 2014, and on May 1, 2014, the jury convicted Appellant of two counts of risking catastrophe, four counts of theft of services, and one count of conspiracy. On June 12, 2014, the trial court sentenced Appellant to six months to twenty-three months in prison to be followed by five years of probation.

On June 16, 2014, Appellant filed her Motion for Reconsideration of Sentence. On August 7, 2014, the trial court denied the motion but entered

an Order granting Appellant immediate parole. On August 18, 2014, Appellant filed a notice of appeal.

The trial court did not require Appellant to prepare a concise statement of errors complained of on appeal under Pennsylvania Rule of Appellate Procedure 1925(b), and the trial court did not file a Rule 1925(a) opinion.[2]

In her brief, Appellant presents the following issue for our review:

> I.  Whether trial counsel was ineffective for failing to object to the trial court's failure to provide a working definition of the "inference" of guilt permitted under the statute for theft of services, and distinguishing the inference under the statute from the presumption of innocence and the burden the Commonwealth to prove [sic] each and every element beyond a reasonable doubt?

Brief for Appellant at 9. We find this claim is premature and should properly be raised, if necessary, in a petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541–9546.

Our Supreme Court recently reaffirmed its prior holding in **Commonwealth v. Grant**, 813 A.2d 726 (Pa. 2002), in the case of **Commonwealth v. Holmes**, 79 A.3d 562 (Pa. 2013). The **Holmes** court held that "claims of ineffective assistance of counsel are to be deferred to PCRA review; trial courts should not entertain claims of ineffectiveness upon post-verdict motions; and such claims should not be reviewed upon direct

---

[2] A notation on the docket dated April 7, 2015, indicates "Opinion Not Filed-Judge No Longer Sitting."

appeal." *Id*. at 576. The Court noted two narrow exceptions for "extraordinary circumstances" to the broader rule, "where the trial court, in the exercise of its discretion, determines that a claim (or claims) of ineffective assistance is both meritorious and apparent from the record so that immediate consideration and relief is warranted," and allowing review for "good cause," such as the shortness of a sentence, or "multiple, and indeed comprehensive, ineffectiveness claims if such review is accomplished by a waiver of PCRA rights." *Id*. at 577–578. In addition, the Court emphasized that "although criminal defendants have a right to direct appeal, they are not obliged to pursue such a course, but may instead proceed immediately under the PCRA. If the defendant (as appellee here) believes that his only viable claims are collateral ones, he need not await the failure of a direct appeal to pursue his claims under the PCRA." *Id*. at 576 n.9.

Instantly, citing to **Holmes**, Appellant baldly posits that her "very narrow, discrete claim of ineffectiveness presented in this case is so compelling that it necessitates this Honorable Court's review on direct appeal." Brief for Appellant at 12. Without further development of this assertion or acknowledging that **Holmes** reinforced the premise that ineffectiveness claims are presumptively reserved for collateral attack, Appellant devotes the remainder of her argument to a discussion of trial counsel's alleged ineffectiveness for his failure to object to the trial court's jury instruction.

The trial court did not find Appellant's claim to be meritorious or apparent from the record, nor does Appellant allege any "good cause" for seeking unitary review. Moreover, Appellant has not stated her intention to waive collateral review. Thus, as neither of the exceptions articulated in **Holmes** is applicable herein, Appellant cannot raise this claim on direct review, and we find Appellant's claim of ineffectiveness of trial counsel must await collateral review.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/12/2016