J-S14004-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| REGINALD  CARROLL | : | |
| | : | |
| Appellant | : | No. 2687 EDA 2018 |

Appeal from the Judgment of Sentence Entered August 24, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001941-2017

BEFORE:  BOWES, J., KING, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.:                                        **FILED MAY 26, 2020**

Reginald Carroll appeals from his August 24, 2018 judgment of sentence of ten to twenty years of imprisonment, imposed after he was found guilty of conspiracy to commit kidnapping.  Appellant's counsel has filed a petition to withdraw and a brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).  Appellant filed several *pro se* responses.  We grant counsel's petition to withdraw, and affirm.

The trial court summarized the facts as follows:

> On January 30, 2017, during late afternoon[,] Agent Louis Schmidt of the Drug Enforcement Agency of the Federal Government was conducting an investigation in the area of a Metro PCS Cell Phone store situated on Frankford Avenue in Philadelphia when he observed Appellant and his three co-defendants exit the store and enter a red Jeep Cherokee.  When the Jeep drove away, the agent followed the vehicle to Erie Avenue but lost it in traffic.  Upon losing visual contact with the vehicle, the agent contacted Officer Torres of the Philadelphia Police Department's Narcotics Enforcement Team so that Officer

Torres could advise other police personnel of what the agent had just observed. At the time, the agent was using a video camera and recorded the defendants leaving the store and entering the Jeep.

Agent Schmidt also informed Philadelphia Police Sergeant Wali Shabazz, assigned to the 25th District's Narcotics Enforcement Team, about what he had observed and that he thought that there was a good chance that a woman was going to be kidnapped. Based upon that information, Sgt. Shabazz and members of his team proceeded to the 2400 block of Aramingo Avenue, the location of a shopping plaza, where the sergeant had two members of his team watch the store in which the alleged victim worked. While driving around the lot, the sergeant saw a red Jeep that matched a description of the vehicle mentioned by Agent Schmidt driving in the parking lot of the shopping center and a black male later identified as [Appellant], who had been described by the agent. He informed the officers conducting the surveillance of the store about what he observed and left the lot to avoid the suspects from identifying his vehicle as a police vehicle.

Sergeant Shabazz drove a couple of blocks away and parked his car. While there, he received a radio call from the officers conducting the surveillance advising him that a woman had been grabbed by two men who forced her into a silver Toyota. The sergeant drove to the shopping center and he and other officers unsuccessfully attempted to box in the Jeep and the Toyota, when they were driven in different directions once they left the parking lot. Sergeant Shabazz pursued the Toyota, which crashed a couple of blocks from the shopping center. Upon crashing, [Appellant] and [Michael Cruz] exited the Toyota and fled. The sergeant proceeded to the vehicle and had contact with the woman who had been abducted as other officers pursued the two males who ran from the Toyota. [Appellant], who was depicted in a video recorded at the scene of the vehicle crash running from the vehicle, was apprehended a short time thereafter and brought over to the Toyota.

After the Toyota crashed, Agent Schmidt was informed that the Jeep was stopped on Aramingo Avenue and that a female, later identified as Crystal Reyes, the complainant herein, had been grabbed by persons earlier observed in the Jeep and placed in another car in the parking lot. The agent immediately drove to Lehigh Avenue and Thompson Street and learned that police were

searching for defendants. At some point, he had contact with [Appellant] who said, essentially, that he had not done anything. The agent showed [Appellant] a photograph of himself which the agent had copied from the video he recorded earlier that day.

In January of 2017, Ms. Reyes, who, at the time knew each of the defendants, worked at a dental office located in the shopping mall at 2400 Aramingo Avenue. On January 31, 2017, Ms. Reyes was at work and noticed a burgundy Jeep driving back and forth outside the dental office. When Ms. Reyes left work that day at about 7:45 p.m., she observed a male wearing clothes that covered him from head to toe walking toward her and another male wearing gray clothing that also covered his entire body get out of the Jeep and approach her. She also saw the Jeep she had seen earlier in the day parked outside another store. The two males forced Ms. Reyes to get into her car, a silver Toyota that belonged to her paramour, at which time the males, who . . . were in phone contact with Torres and who w[ere] giving them directions, took Ms. Reyes'[s] cell phone and purse and told Ms. Reyes to be quiet and cooperate with them because they had her children. One of the males then began driving the Toyota but almost immediately police vehicles drove up to the Jeep and Ms. Reyes'[s] vehicle and unsuccessfully attempted to box in the Jeep, which was occupied by Torres and co-defendant Rodriguez, and the Toyota containing Ms. Reyes and the two other males. After a short pursuit the car containing Ms. Reyes crashed and the two men inside it fled. Police came up to the car and directed Ms. Reyes to stay inside it. Other officers chased after [Appellant] and [Cruz] and [Appellant] was apprehended shortly thereafter following a short pursuit but Cruz avoided apprehension.

Philadelphia Police Officers John Logan and his partner pursued the Jeep, which co-defendant Rodriguez was driving and in which Torres was a passenger. However, the officers lost sight of the Jeep in traffic and later found it abandoned in the 3000 block of Livingston Street. During the pursuit, which continued for about fifty blocks, co-defendant Rodriguez committed numerous traffic violations.

Shortly after the Toyota crashed, the police brought [Appellant] to Ms. Reyes and in Sergeant Shabazz's presence, she identified [Appellant] as being the male who was wearing the gray sweater when she was abducted and who forced her into the Toyota. Subsequent thereto, Ms. Reyes was interviewed by police and told

- 3 -

them about what happened to her when she left work. During the interview, she identified photographs depicting co-defendants Torres and Rodriguez.

On February 1, 2017, police interviewed Ms. Reyes. During [the interview] she indicated that after the car crashed, she began driving the car and threw a gun into a flowerpot that [Appellant] left in the Jeep when he fled. She also identified a photograph of [Cruz]. She added that after giving her first statement to police she told her paramour about the gun she hid in the flowerpot and that he retrieved and ultimately brought [it] to the police. She also stated that [Appellant] showed her a gun when he and [Cruz] accosted her and that [Cruz] was the person who took her purse and cell phone from her.

Mr. Elin Gonzalez-Ramirez was working as a cab driver the evening when the incident herein occurred. At about 8:15 p.m., he went to 1100 Belgrade Street in Philadelphia, which was near where the Jeep was found, and picked up Torres and Rodriguez and drove them to the 4000 block of I Street in Philadelphia. Authorities also recovered a video from inside a bar near where the Jeep was located. It depicted Torres and Rodriguez together inside the bar.

A search of the Jeep resulted in the recovery of a driver's license in the name of Tashira Marie Rodriguez and a vehicle registration that indicated that the Jeep was registered to someone with the same name. They also recovered some photographs depicting Torres and Rodriguez and an unknown prison inmate and another depicting [Cruz] with the same inmate. Four empty cell phone boxes and purchase receipts connected thereto, which showed that the phones had been purchased on January 31, 2017, were also seized. Police later matched cell phones found by police on the night of the incident and inside of a residence in the 3900 block of I Street to two of the empty boxes found inside the Jeep. One of the receipts listed Rodriguez as a purchaser and another the complainant, Crystal Reyes.

Philadelphia Police Officer John Seigafuse was one of the officers who participated in the surveillance conducted at the shopping plaza on Aramingo Avenue. While so engaged, he saw the red Jeep and observed [Appellant] exiting from it. He also saw [Appellant] engage in a phone call and then enter a store following which he saw [Appellant] sit on the back of a truck and then take

a gun out of his pocket, approached a female, and put her into a car. He then observed the unsuccessful attempt to box in the Jeep and the Toyota after which he proceeded to the location where the Toyota crashed where he witnessed Ms. Reyes identify [Appellant].

Following the collection of the videos and other evidence, police obtained arrest warrants for [Cruz], Torres, and Rodriguez. Torres and Rodriguez were arrested together inside of a residence in the 3900 block of I Street.

Trial Court Opinion, 3653 EDA 2018, 6/26/19, at 2-7 (footnotes and citations to record omitted).[1]

Appellant was charged with robbery of a motor vehicle, conspiracy to commit robbery of a motor vehicle, kidnapping, conspiracy to commit kidnapping, numerous firearms charges, unlawful restraint, and terroristic threats. On May 30, 2018, following a six-day trial, the jury found Appellant guilty of conspiracy to commit kidnapping to inflict terror only. On August 24, 2018, he was sentenced to a term of ten to twenty years of incarceration.

Appellant filed a post-sentence motion in which he challenged his sentence as unreasonable and alleged that the verdict was against the weight of the evidence. The motion was denied on September 12, 2018. Appellant

_____

[1] The trial court did not author an opinion in the case *sub judice*. **See Commonwealth v. McBride**, 95 A.2d 752, 758 (Pa.Super. 2008) (explaining that no trial court opinion is required in response to Rule 1925(c)(4) statement). However, it authored an opinion in the appeal of Appellant's co-defendant Michael Cruz at No. 3653 EDA 2018, which is also assigned to this panel.

timely appealed, and counsel filed a Rule 1925(c)(4) statement indicating that he intended to file an *Anders* brief, and petitioned to withdraw as counsel.

Counsel filed an *Anders* brief discussing issues that Appellant wanted to pursue, and concluded further that no other issues could reasonably support the appeal. He provided a summary of the facts and procedural history, referred to portions of the record that arguably support the appeal, stated his conclusion, and provided Appellant with copies of his petition and brief. Appellant filed two *pro se* responses to counsel's *Anders* brief. In his first response, he alleged that appellate counsel was ineffective in failing to investigate other viable appellate issues. In addition, he asked this Court to direct counsel to provide him with notes of testimony and documents that would enable him to file an additional response to counsel's petition. He also asked this Court to remand the case to the trial court for the filing of a new Rule 1925(b) concise statement, as he maintained counsel did not present proper argument, and a *Grazier* hearing to determine if he was capable of representing himself. By order of August 26, 2019, this Court denied Appellant's request for a remand for a *Grazier* hearing and a new Rule 1925(b) statement, but directed counsel to provide Appellant with the notes of testimony and relevant documents. Appellant was also advised that his "failure to file a *pro se* or counseled response may be considered as a waiver of his right to present his issues to this Court." Order, 8/26/19.

On October 21, 2019, Appellant filed a motion for an extension of time, pleading therein that counsel had not provided him with full and complete discovery, and thus, he was unable to fully assess the issues raised on appeal. His motion was granted in part. He was given an additional thirty days in which to file a *pro se* or counseled response. He incorporated therein his first response, and reserved the right to file a brief addressing the matters that counsel identified in the *Anders* brief. Appellant also renewed his request for discovery documents, which was denied without prejudice to raise the issue in his brief.

On December 9, 2019, Appellant filed an additional response to the *Anders* brief. Appellant complained that counsel failed to present proper arguments in regard to the issues raised in the *Anders* brief. Additional Response to *Anders* Brief, 12/10/19. By order dated December 10, 2019, this Court denied counsel's motion to withdraw.

Before us is a situation similar to the one in *Commonwealth v. Bennett*, 124 A.3d 327, 333 (Pa.Super. 2015), where counsel files an *Anders* brief and the appellant files a *pro se* or counseled response. We outlined in *Bennett* the proper procedure in such cases. First, we determine whether counsel fulfilled the dictates of *Anders/Santiago*, and if so, we address the issues raised in the *Anders* brief. We also conduct an independent examination of the record as to those issues. If we find the issues meritless, we next examine Appellant's *pro se* allegations. As to the latter, we do not

- 7 -

conduct an independent review of the record as Appellant's *pro se* response/brief is treated as an advocate's brief.

We turn first to the counsel's petition to withdraw and **Anders** brief. Counsel must comply with the following procedures.

> Direct appeal counsel seeking to withdraw under **Anders** must file a petition averring that, after a conscientious examination of the record, counsel finds the appeal to be wholly frivolous. Counsel must also file an **Anders** brief setting forth issues that might arguably support the appeal along with any other issues necessary for the effective appellate presentation thereof . . . .
>
> **Anders** counsel must also provide a copy of the **Anders** petition and brief to the appellant, advising the appellant of the right to retain new counsel, proceed *pro se* or raise any additional points worthy of this Court's attention.
>
> If counsel does not fulfill the aforesaid technical requirements of **Anders**, this Court will deny the petition to withdraw and remand the case with appropriate instructions (*e.g.,* directing counsel either to comply with **Anders** or file an advocate's brief on Appellant's behalf). By contrast, if counsel's petition and brief satisfy **Anders**, we will then undertake our own review of the appeal to determine if it is wholly frivolous. If the appeal is frivolous, we will grant the withdrawal petition and affirm the judgment of sentence. However, if there are non-frivolous issues, we will deny the petition and remand for the filing of an advocate's brief.

**Commonwealth v. Wrecks**, 931 A.2d 717, 720-21 (Pa.Super. 2007).

Counsel filed the required petition averring that, after a conscientious review of the record, he found the appeal to be wholly frivolous. He filed an **Anders** brief discussing issues that Appellant wanted to pursue, and concluded further that no other issues could reasonably support the appeal.

He provided Appellant with copies of his petition and brief, and advised Appellant that Appellant could retain new counsel or proceed *pro se*, and raise any additional arguments. Thus, counsel complied with the technical ***Anders*** requirements.

> In ***Santiago***, our High Court further clarified the ***Anders*** procedure:
>
> [I]n the ***Anders*** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statues on point that have led to the conclusion that the appeal is frivolous.

***Santiago***, ***supra*** at 361.

After conducting our review of counsel's ***Anders*** brief, we find that counsel has substantially complied with the additional ***Santiago*** requirements. Counsel represented that he had reviewed the entire record. He provided a summary of the facts and procedural history, referred to portions of the record that arguably support the appeal, stated his conclusion that the appeal is frivolous, and cited authority in support thereof. In addition, counsel apprised Appellant of his right to proceed *pro se* or retain another attorney.

Preliminarily, we will review the issues presented by counsel in the ***Anders*** brief. Then, we will review the subsequent *pro se* filing as we do any advocate's brief. ***Bennett***, ***supra*** at 333.

Counsel identified four issues that Appellant sought to raise on appeal:

1. The verdicts were against the weight of the evidence because the testimony presented by the Commonwealth was perjurious, contradictory, inconsistent, and wholly unworthy of belief so much so that the verdict shocks the conscience.

2. The indictment charging Appellant was defective in that it did not adequately advise Appellant of the crimes with which he was charged.

3. Appellant was denied of his right to confront his accusers because the Commonwealth did not call as a witness the police officer who was informed by the DEA agent of the activities of Appellant and his co-defendants' [sic].

4. The sentence was unreasonable in light of all of the circumstances presented.

*Anders* brief at 16, 19, 22, 26.

The standard in reviewing a weight of the evidence claim is well settled:

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (emphasis and citations omitted).

The trial court denied relief to Appellant on his weight claim. Although we do not have the benefit of an opinion providing the court's reasoning, the record reveals the following. Much of the evidence at trial consisted of the

testimony of Complainant and law enforcement officers who witnessed the criminal activity. In addition, there was video footage corroborating the testimony of those witnesses, and which the jury found inculpated Appellant. We agree with counsel that, "given the overwhelming and credible evidence presented by the Commonwealth[,] it is clear that present counsel's conclusion that raising a weight claim would be wholly frivolous is supported by the record." *Anders* brief at 18.

Appellant's claim that the indictment was defective fares no better. The charging document was a bill of information, not an indictment. Appellant did not object below to any lack of specificity or irregularities in the information. Hence, the issue is waived. *See Commonwealth v. Strunk*, 953 A.2d 577,580 (Pa.Super. 2008) ("One must object to errors, improprieties or irregularities at the earliest possible stage of the criminal. . . adjudicatory process, to afford the jurist hearing the case the first occasion to remedy the wrong and possibly avoid an unnecessary appeal to complain of the matter."); *see also* Pa.R.A.P. 302(a) ("Issues not raised in the trial court cannot be raised for the first time on appeal."). "Having been waived, pursuing this matter on direct appeal is frivolous." *Commonwealth v. Kalichak*, 943 A.2d 285, 291 (Pa.Super. 2008).

Appellant's claim that he was denied a fair trial because he was not afforded the opportunity to confront Narcotics Officer Torres, the officer whom Agent Louis Schmidt contacted after he observed defendants, is wholly lacking

in merit. Agent Schmidt testified that he received information from Officer Torres while he was in the process of searching for defendant after losing sight of him when he sped away in the Toyota. N.T., 5/23/18, 13-17. He did not testify as to what Officer Torres told him. The Commonwealth chose not to call Officer Torres, as was its prerogative. Thus, Appellant was not deprived of the right to confront a witness who testified against him. *See Crawford v. Washington*, 541 U.S. 36, 51-52 (2004); *Commonwealth v. Yohe*, 79 A.3d 520, 531 & n.10 (Pa. 2013). More importantly, Appellant did not raise this issue at trial, and thus, it is waived. *See* Pa.R.A.P. 302(a). We agree with counsel that the issue is wholly frivolous. *See Kalichak*, *supra* at 291.

Finally, Appellant complains that his sentence is unreasonable, which presents a challenge to discretionary aspects of sentence. An appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right. Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction." *Commonwealth v. Samuel*, 102 A.3d 1001, 1006-07 (Pa.Super. 2014). Counsel maintains that Appellant failed to invoke this Court's jurisdiction to hear his discretionary sentencing claim.

In determining whether an appellant has invoked our jurisdiction, we consider four factors:

> whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the

- 12 -

sentence appealed from is not appropriate under the Sentencing Code.

*Id*.

Appellant filed both a timely post-sentence motion and a notice of appeal. In his motion, Appellant alleged that his sentence was unreasonable. He also raised this issue in his concise statement of errors complained of on appeal. In addition, the **Anders** brief contains the required Pa.R.A.P. 2119(f) statement. Therefore, Appellant properly preserved this issue and we now proceed to determine whether Appellant has raised a substantial question. *Id*.

Appellant's claim is that his sentence was unreasonable in light of all the circumstances presented. Counsel maintains that a substantial question cannot be raised on appeal because the failure to consider a factor does not raise a substantial question and because Appellant's post-sentence motion failed to specify what circumstances warranted a shorter sentence. **Anders** brief at 24-25. Counsel relies upon **Commonwealth v. Hornaman**, 920 A.2d 1282, 1284 (Pa.Super. 2007), in which this Court held that general assertions that a sentence is "unreasonable" or "excessive" do not establish a substantial question. In short, counsel submits that he is unable to present a non-frivolous discretionary sentencing claim because Appellant's post-sentence motion failed to state why or what underlying circumstances rendered the sentence unreasonable. *Id*. at 26.

Counsel represents further that, even if Appellant had raised a substantial question, in his view the court did not commit an abuse of discretion in imposing sentence as it reviewed the pre-sentence investigation report, the mental health evaluation, and considered Appellant's mother's testimony and Appellant's allocution prior to imposing sentence. Counsel does note, however, that although the sentencing court characterized the sentence as a standard range sentence, the sentence exceeded the standard range. However, counsel stated he could not challenge the imposition of such a sentence on the basis that the trial court failed to provide sufficient reasons for exceeding the recommended guideline sentence as that issue was not presented to the trial court at sentencing or in a post-sentence motion. **Anders** brief at 28 n.8 (citing **Malovich**, **supra** at 1251 ("To preserve an attack on the discretionary aspects of [a] sentence, an appellant must raise his issues at sentencing or in a post-sentence motion."). Hence, counsel maintains that it would be fruitless to pursue that issue on appeal.

We agree with counsel's analysis. **See Commonwealth v. Titus**, 816 A.2d 251, 255-56 (Pa.Super. 2003) (concluding defendant did not present a substantial question for review where claim was "a bald allegation of excessiveness and [did] not raise any challenge in the claim itself or in the brief as to a violation of the Sentencing Code or a particular fundamental norm underlying the sentencing process"). Furthermore, Appellant did not preserve below any claim that the trial court did not state its reasons on the record for

imposing a sentence above the standard range. Moreover, we have reviewed the transcript of the sentencing proceeding. The trial court sufficiently stated on the record in Appellant's presence his reasons for the sentence imposed. *See Commonwealth v. Antidormi*, 84 A.3d 736, 760 (Pa.Super. 2014) (the requirement that the sentencing court file a statement of reasons for sentencing outside the guidelines is satisfied when the judge states his reasons for the sentence on the record in the presence of the defendant). Accordingly, we agree with counsel that this discretionary sentencing claim presented in the *Anders* brief is wholly frivolous.

We turn now to the issues raised in Appellant's *pro se* responses. Appellant claimed that appellate counsel failed to investigate and discover additional meritorious arguments to pursue on direct appeal. In addition, he complained that counsel did not adequately develop and support the issues raised in the *Anders* brief. These claims sound in ineffective assistance of counsel, which are generally deferred to collateral review under *Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002).

Appellant adopts the issues identified by counsel in the *Anders* brief, but does not advance any additional argument as to why they warrant relief. Hence, we find Appellant's *pro se* claims unavailing as well. We therefore grant counsel's petition to withdraw and affirm the August 24, 2018 judgment of sentence.

Petition to withdraw of John Belli, Esquire, granted. Judgment of sentence affirmed.

Judge King joins the memorandum.

P.J.E. Ford Elliott concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/26/2020