J-S30028-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
LAURENSAU JOSEPH :
:
Appellant : No. 694 EDA 2022

Appeal from the PCRA Order Entered February 18, 2022
In the Court of Common Pleas of Wayne County Criminal Division at
No(s): CP-64-CR-0000092-1998

BEFORE: STABILE, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McCAFFERY, J.: **FILED MARCH 10, 2023**

Laurensau Joseph (Appellant) appeals *pro se* from the February 18, 2022, order entered in the Wayne County Court of Common Pleas, denying without a hearing his first, timely Post Conviction Relief Act[1] (PCRA) petition, which had been filed 21 years earlier.[2]  In its Pa.R.Crim.P. 907 notice, the PCRA court also granted the petition of Appellant's appointed counsel to withdraw, filed 19 years earlier.  Appellant avers the PCRA court erred in denying his petition where PCRA counsel had abandoned him for 20 years.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9545.

[2] The Commonwealth is presently represented by the Office of the Pennsylvania Attorney General (AG's Office).

We agree, and thus vacate and remand for the appointment of new counsel and further proceedings.

In April of 1998, Appellant, then 24 years old, believed his former foster brother, Michael Smith, stole his necklace and vandalized his car. They argued in the victim's bedroom. The victim

> picked up a machete and [A]ppellant pulled out a hand gun and shot [the victim] in the face[. The victim], bleeding profusely, dropped the machete and went downstairs[. A]ppellant followed and fired a second shot striking [the victim] in the forehead, immediately killing him. The next day[, A]ppellant went to the Pennsylvania State Police barracks [and] gave a 34-page statement admitting that he shot [the victim] twice.

*Commonwealth v. Joseph*, 141 EDA 1999 (unpub. memo. at 2) (Dec. 3, 1999) (record citation omitted).

On August 20, 1998, Appellant was found guilty by a jury of first-degree murder.[3] Eight days later, on August 28th, the trial court imposed a sentence of life imprisonment without parole.

On direct appeal, this Court affirmed the judgment of sentence on December 3, 1999. We note the panel addressed, as was proper at that time,

---

[3] 18 Pa.C.S. § 2502(a). Trial was conducted by the Honorable Robert Conway, then President Judge. The instant PCRA order was issued by the current President Judge, the Honorable Janine Edwards.

- 2 -

several claims of trial counsel's ineffectiveness.[4]  Appellant did not seek allowance of appeal with the Pennsylvania Supreme Court.

On December 6, 2000, Appellant filed the underlying *pro se*, timely first PCRA petition.[5]  He claimed there was new, exculpatory evidence that was not available at the time of trial: a tan leather coat, photos showing damage to Appellant's car, and letters purporting to show Appellant had an affair with his foster mother, the latter of which would allegedly show Appellant's foster father had a motive for testifying against him at trial.

On September 12, 2002, the PCRA court appointed Alfred Howell, Esquire (PCRA Counsel), to represent Appellant.  On November 7th, the court granted PCRA Counsel's request for an extension of time to file an amended petition.  This was the last docket entry attributable to the trial court for 19 years.

---

[4] ***But see Commonwealth v. Grant***, 813 A.2d 726, 738 (Pa. 2002) ("[A]s a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review.") (footnote omitted).

[5] For PCRA purposes, Appellant's judgment of sentence became final on Monday, January 3, 2000 — the expiration of the 30-day period for him to file a petition for allowance of appeal.  ***See*** 1 Pa.C.S. § 1908; 42 Pa.C.S. § 9545(b)(3); Pa.R.A.P. 1113(a).  Appellant then generally had one year, or until January 3, 2001, to file a PCRA petition.  ***See*** 42 Pa.C.S. § 9545(b)(1).

On December 23, 2002, PCRA Counsel filed a two-page motion to withdraw from representation,[6] along with a two-page letter addressed to the PCRA court. Counsel stated he had "several correspondences" with Appellant, and Appellant wished to pursue claims that trial counsel was ineffective for failing to: (1) ask Appellant "what he was thinking at the time he fired the second shot;" (2) present testimony by a forensic psychiatrist; (3) seek a private investigator; (4) obtain Appellant's "full notebook" through discovery; and (5) "object to certain witnesses who cried while testifying." PCRA Counsel's Motion to Withdraw as Counsel & Exh., Letter, 12/23/02. Counsel offered no further discussion or legal analysis for any of these claims, but concluded they were frivolous, and furthermore there were no valid and justifiable claims. Counsel did not state whether he advised Appellant he was seeking to withdraw or that Appellant had a right to retain new counsel or proceed *pro se*.[7] Neither the record nor the docket show any further participation by PCRA Counsel in this matter.

_____

[6] This petition did not refer to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), or **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*), but did cite other cases that discussed **Turner**/**Finley** procedures.

[7] Counsel seeking to withdraw from PCRA representation pursuant to **Turner** and **Finley** must: (1) "submit a 'no-merit' letter to the trial court . . . detailing the nature and extent of counsel's diligent review of the case, listing the issues which petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw." **Commonwealth v. Doty**, 48 A.3d 451, 454 (Pa. Super. 2012). Counsel must also "send to the petitioner: (1) a copy of the 'no merit' letter/brief; (2) a copy of counsel's
*(Footnote Continued Next Page)*

Following the motion to withdraw, there was no docket activity for more than five years, until Appellant filed a *pro se* letter on August 26, 2008. This letter, which is not entirely clear, presented multiple allegations about his foster mother: she had an affair with another person; she possibly stole his necklace; she took control of his bank account, as power of attorney, following his incarceration and stole the account's money; and she pawned his various electronic devices, which were meant to be given to Appellant's son, in order to buy "crack [cocaine]." Appellant's Letter, 8/26/00, at 1-2 (unpaginated). Appellant made one brief reference to his PCRA petition: "There is more evidence in my PCRA sent in 2000." *Id.* at 2.

The docket was then stagnant for another 13 years, until October 25, 2021, when Appellant filed a second *pro se* letter. Without any further discussion, this four-sentence letter: (1) requested the address of a bank; and (2) stated Appellant was not aware of a stipulation at trial, that "blood found at the scene" was not Appellant's blood, but the victim's blood.[8] **See** Stipulation of Counsel, 8/18/98, attachment to Appellant's Letter, 10/25/21.

_____

petition to withdraw; and (3) a statement advising petitioner of the right to proceed *pro se* or by new counsel." **Id.**

[8] These filings predated the 2004 amendment to Pa.R.Crim.P. 576(a)(4), which now provides that when a represented defendant submits a *pro se* motion, notice, or document, the clerk of courts shall stamp it with the date of receipt, make a docket entry, and forward copies of the document to defense counsel and the Commonwealth.

Next, on November 23, 2021, the AG's Office entered its appearance on behalf of the Commonwealth and filed a motion for a status conference. The Commonwealth explained Appellant had filed a habeas action in the United States District Court for the Middle District of Pennsylvania, and that court had, two days earlier, stayed the habeas action pending disposition of Appellant's still-outstanding 2000 PCRA petition.[9]

On January 4, 2022, Appellant filed a *pro se* "Motion for an Immediate Evidentiary Hearing," which averred PCRA Counsel had abandoned him for 21 years, and thus Appellant was denied his right to counsel. On the same day, Appellant also filed an amended PCRA petition, raising several claims of trial counsel's ineffectiveness and newly-discovered evidence.

The following day, January 5, 2022, the PCRA court issued a Pa.R.Crim.P. 907 notice of intent to dismiss the PCRA petition, the sum of which stated, " . . . [Appellant] is hereby ADVISED of his right to respond in writing to this proposed dismissal within [20] days . . . ." Notice of Intent to Dismiss, 1/5/22. On January 25th, however, the court issued an amended Rule 907 notice, which agreed, without any legal discussion, with PCRA Counsel's 2002 assessment that Appellant's claims were meritless. The court also permitted PCRA Counsel to withdraw from representation.

_____

[9] The caption for the federal matter is **Joseph v. Estock**, with a docket number of 20-cv-1978.

Appellant filed two *pro se* responses to the Rule 907 notice, both again raising PCRA Counsel's ineffectiveness for abandoning him. On February 18, 2022, the PCRA court entered the underlying order, denying the 2000 PCRA petition. Appellant took this timely appeal and complied with the court's order to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. The court issued a brief Rule 1925(a) opinion, which referred to and incorporated the Rule 907 notice.

On appeal, Appellant raises multiple claims of trial counsel's ineffectiveness, as well as newly-discovered evidence. We focus however on one argument — that the PCRA court erred in denying his petition, where PCRA Counsel abandoned him for 21 years, which caused him to be without the effective assistance of counsel. Appellant's Brief at 7, 13-14. Appellant further avers the "inordinate delay in processing and disposing of his" petition violated his due process rights. *Id.* at 11. We agree that relief is due.

"Our standard of review for issues arising from the denial of PCRA relief is well-settled. We must determine whether the PCRA court's ruling is supported by the record and free of legal error." *Commonwealth v. Bush*, 197 A.3d 285, 286 (Pa. Super. 2018) (citation omitted).

"[A] petitioner has a rule-based right to the appointment of counsel for a first PCRA petition[,] Pa.R.Crim.P. 904," which includes "the effective assistance of counsel. The guidance and representation of an attorney during collateral review ensures that meritorious legal issues are recognized and

addressed, and that meritless claims are abandoned." ***Commonwealth v. Bradley***, 261 A.3d 381, 391-92 (Pa. 2021).

> "The indigent petitioner's right to counsel must be honored regardless of the merits of his underlying claims, even where those claims were previously addressed on direct appeal, so long as the petition in question is his first." "Moreover, once counsel is appointed, he [or she] must take affirmative steps to discharge his [or her] duties."

***Commonwealth v. Cherry***, 155 A.3d 1080, 1082-83 (Pa. Super. 2017) (citations omitted). Finally, "due process requires that the post conviction process be fundamentally fair. Thus, petitioners must be given the opportunity for the presentation of claims at a meaningful time and in a meaningful manner." ***Bush***, 197 A.3d at 288 (citation omitted).

On appeal, the Commonwealth argues for affirmance, despite the 20-year lapse of time. ***See*** Commonwealth's Brief at 10. In light of our review of the record, however, we conclude Appellant is entitled to some measure of relief.

We emphasize that in 2002, PCRA Counsel filed a two-page, deficient motion to withdraw, and the PCRA court did **nothing** in this case for 20 years. When prompted by the Commonwealth's request for a status conference to investigate this case, the PCRA court merely issued a Rule 907 notice of intent to dismiss, based on PCRA Counsel's 20-year old underdeveloped filing. The court's Rule 907 notice similarly lacked any legal analysis beyond merely reciting broadly what Appellant's claims would be.

Furthermore, the PCRA court did not acknowledge, let alone address, what effect, if any, the passage of 20 years may have had on Appellant's claims or due process rights, nor did the court consider whether any new claims may have arisen and/or would be entitled to review. Meanwhile, since the Commonwealth's November 23, 2021, motion for a status conference, Appellant has consistently argued he has been abandoned by PCRA Counsel. Appellant timely raised this claim before and after the court's Rule 907 notice, and on appeal before this Court.[10] Nevertheless, the PCRA court has not addressed this claim.

On this particular record, we cannot conclude Appellant was properly afforded "the opportunity for the presentation of claims at a meaningful time and in a meaningful manner." **See Bush**, 197 A.3d at 288 (citation omitted). We emphasize that we offer no opinion as to the merits of any of the PCRA claims Appellant has raised. Instead, we conclude an investigation of any presently potential claims should be undertaken by an attorney, in accordance with Appellant's right to counsel. **See** Pa.R.Crim.P. 904; **Bradley**, 261 A.3d at 391-92; **Cherry**, 155 A.3d at 1082-83. Accordingly, we vacate the order denying Appellant's PCRA petition, and remand for the PCRA court to appoint

---

[10] **See Bradley**, 261 A.3d at 401 ("[W]e hold that a PCRA petitioner may, after a PCRA court denies relief, and after obtaining new counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal[.]").

new counsel, who shall then file either an amended PCRA petition or a *Turner*/*Finley* "no merit" letter.

Order vacated. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/10/2023